**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | Case No. 20-12377 MER |
| Sklar Exploration Company, LLC, et al. | Chapter 11 Jointly Administered |
| Debtors. | |
| Thomas M. Kim, Creditor Trustee of the Sklarco Creditor Trust, | Adversary Pr. No. 24-1274 MER |
| Plaintiff, | |
| v. | |
| Sklar Exploration Co., LLC and Sklarco, LLC. | |
| Defendants. | |

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

THIS MATTER comes before the Court on the Motion to Dismiss Second Claim for Relief ("**Motion to Dismiss**") filed by the Defendants and Reorganized Debtors, Sklar Exploration Company, LLC and Sklarco LLC (collectively "**Debtors**"), the response filed by the Plaintiff, Tom Kim ("**Kim**") as the Trustee of the Creditor Trust and Debtors' reply.[1] The Motion to Dismiss seeks dismissal of one of the four breach of contract claims asserted by Kim against the Debtors.

**BACKGROUND**

This dispute centers on provisions of the Second Amended and Restated Plan of Reorganization ("**Plan**") confirmed in the Debtors' main bankruptcy case in 2021.[2] The

---

[1] ECF Nos. 77, 81, 82.

[2] Case No. 20-12377, ECF No. 1251. Kim did not attach a copy of the Plan to his Amended Complaint but quotes it extensively. Given that the Plan's terms are central to this dispute and no party contests the Plan's authenticity, the Court will consider the terms of the Plan in deciding the Motion to Dismiss. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (On a motion to dismiss, courts can consider: (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice.).

Plan provides for the appointment of a Creditor Trust. Kim is the appointed Trustee of the Creditor Trust. As relevant to this dispute, the Plan provides that the Debtors' primary secured creditor, East West Bank ("**EWB**"), has an allowed claim for $24 million ("**EWB Secured Claim**"). The Plan further provides the Debtors will make certain periodic payments on EWB's Secured Claim and that the outstanding balance of the Claim would be due and payable on the second anniversary of the Plan's effective date (or September 7, 2023). At that point, the Plan requires Debtors to pay the remaining balance either "through sale of assets or refinance of the EWB Secured Claim."[3] Such a sale or refinance is defined as a "Monetizing Event" by the Plan.[4] Section 8.8 of the Plan sets out how the Debtors must distribute the proceeds from a Monetizing Event. The Trust is second in line to receive proceeds:

> Upon occurrence of a Monetizing Event, the proceeds of such Monetizing Event shall be distributed as follows:
>
> a. First, to EWB up to $21 million, less any i) post-petition and preconfirmation payments for principal, interest, or fees, but excluding payments for attorney fees, and ii) all principal payments received post-confirmation through the date of the Monetizing Event, and post-confirmation principal payments, excluding any payments for attorney fees, as satisfaction in full of the EWB Secured Claim;
>
> b. Second, to the Creditor Trust up to the amount of $3 million flowing from the agreed allocation of the EWB Secured Claim, in addition to the amounts received from the sale of any assets in which the Creditor Trust has been granted an interest;
>
> c. Third, to the Creditor Trust and the Howard Trust in accordance with the Creditor Trust Allocation and the Howard Sklar Trust Allocation, respectively until the earlier of i) payment in full of the Creditor Trust Payment Obligation, or ii) payment in full of all Allowed Class 6 and Class C Claims;
>
> d. Fourth, all remaining funds, if any, to the Class 7 and Class D Interest Holders.[5]

The Amended Complaint does not contain any factual allegations concerning the Debtors' post-confirmation efforts to sell assets or refinance the EWB Secured Claim. Kim does not specifically allege a "Monetizing Event" occurred. Nevertheless, the

---

[3] Plan § 5.1(d) ("The EWB Secured Claim shall become due and payable on the second anniversary of the Effective Date of the Plan, which amount shall be paid through sale of assets or refinance of the EWB Secured Claim.").

[4] Plan § 1.62 ("'Monetizing Event' means the occurrence of a refinancing of the EWB Secured Claim, a sale by the Reorganized Debtors of all or substantially all of their respective assets, or a sale following a foreclosure on collateral securing the EWB Secured Claim.").

[5] Plan § 8.8.

2

Second Claim for Relief alleges that, assuming a Monetizing Event did occur, the Debtors breached § 8.8 by failing to pay the Creditor Trust $3 million.

The Debtors' Motion to Dismiss argues the Second Claim is deficient as a matter of law because nothing in § 8.8 guarantees a payment of $3 million to the Creditor Trust. Rather, Debtors characterize § 8.8 as a "waterfall provision" that allowed for payment to the Creditor Trust only if sufficient funds were received from a Monetizing Event to first pay EWB's claim in full.

## ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and construe the complaint in favor of the plaintiff.[6] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] The critical question is, "assum[ing] the truth of all well-pleaded facts ... and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "'raise[s] a right to relief above the speculative level."[9]

### B. Breach of Contract

The parties agree that Colorado law governs the interpretation of the Plan.[10] Under Colorado law, to state a claim for breach of contract, Kim's Amended Complaint must allege facts that plausibly suggest the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.[11] Interpretation of a written contract and the determination of whether a

---

[6] *Ash Creek Mining v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).

[7] *Duran v. Carris*, 238 F.3d 1268, (10th Cir. 2001) (quotation omitted).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[9] *Dias v. City & County of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

[10] Section 11.4 of the Plan provides that Colorado law governs the construction and implementation of the Plan.

[11] *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

provision in the contract is ambiguous are questions of law.[12] "If the underlying contract is unambiguous and the plaintiff fails to state a claim based on the language of the contract, a motion to dismiss should be granted."[13] However, ambiguous contract language may not be resolved in a motion to dismiss.[14]

Not surprisingly, the parties take opposing positions on whether the Plan contains ambiguities. The Debtors focus on § 8.8 and argue it is unambiguous and there has been no breach. Kim argues at least two provisions of the Plan are ambiguous, § 8.8 and the definition of Monetizing Event in § 1.62. Because of these ambiguities, Kim argues the Court should deny the Motion to Dismiss.

The Court agrees that, in general, the structure of the waterfall in § 8.8 is not ambiguous. What appears to be the bigger issue, however, is the meaning of the term "refinance" or "refinancing" as used in the definition of Monetizing Event and the provision specifying treatment of EWB's Secured Claim.[15] Specifically, the parties appear to dispute whether a "refinance" required a full payment of the EWB Secured Claim.[16] This issue could be affected by § 8.13 of the Plan, which prohibits the Debtors from settling or otherwise compromising the EWB Secured Claim.[17]

The Court cannot adequately delve into these issues because the Complaint is completely devoid of any allegations about the occurrence of a Monetizing Event, the amount of funds resulting from that Event, and how Debtors distributed those funds. The parties' briefs contain some discussion of post-confirmation events and the Debtors' alleged refinance of the EWB debt. The Court has also been made aware of such events in other court hearings and pleadings on unrelated matters. However, the Court is constrained from considering such information in determining the Motion to Dismiss. Rather, the Court must test the sufficiency of the allegations within the four

---

[12] *McAuliffe*, 69 F.4th at 1144.

[13] *McCollam v. Sunflower Bank, N.A.*, 598 F.Supp.3d 1104, 1109 (D. Colo. 2022).

[14] *Id*.

[15] Plan, §§ 1.62, 5.1(d). The Plan does not define the term "refinance." Nor does the Bankruptcy Code. Courts construing subsections 11 U.S.C. § 523(a) have looked to the dictionary meaning. *E.g. In re Kurz*, 660 F.Supp.3d 1046, 1053 (D. Colo. 2023) (in construing § 523(a)(8), stating that "refinance is defined in Black's Law Dictionary as 'an exchange of an old debt for a new debt, as by negotiating a different interest rate or term or by repaying the existing loan with money acquired from a new loan.'"); *In re Biondo*, 180 F.3d 126, 132 n. 5 (4th Cir.1999) (quoting Black's Law Dictionary definition of "refinance" in the context of construing § 523(a)(2)).

[16] See, e.g.,

[17] Plan, § 8.13 ("From and after the Effective Date, the Reorganized Debtors and the Creditor Trust shall have the authority, in their discretion, to file, settle, compromise, withdraw, or litigate to judgment all objections, if any, to Administrative Claims and Claims, except the EWB Secured Claim, which Claim is Allowed under this Plan.").

corners of the Amended Complaint after taking those allegations as true.[18] Attempting to add allegations in a response brief is insufficient.[19] As currently drafted, the Court cannot determine whether Kim has adequately alleged elements 3 and 4 above—a breach of the Plan by Debtors resulting in damages.

The Court will grant Kim leave to amend to add the missing facts discussed above. Pursuant to Rule 15, leave to amend a complaint shall be freely given when justice so requires.[20] Although this Court has discretion to deny leave to amend, the Court does not believe there are sufficient grounds for a denial in this case, such as undue delay, bad faith, a dilatory motive, repeated failure to cure deficiencies, or undue prejudice.[21]

## CONCLUSION

For the reasons set forth above, the Court hereby ORDERS as follows:

1. Debtors' Motion to Dismiss is GRANTED as to the Second Claim for Relief; and

2. Kim is granted leave to amend to address the deficiencies addressed above and shall file an amended complaint on or before **March 24, 2026**.

Dated: March 10, 2026.                    BY THE COURT:

*[signature]*

Michael E. Romero, Judge
United States Bankruptcy Court

---

[18] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

[19] *Powell v. McDonough*, 2023 WL 2743529, at *5 (D.N.M. Mar. 31, 2023).

[20] Fed. R. Civ. P. 15(a)(2).

[21] *York ex rel. York v. Cherry Creek Sch. Dist. No. 5*, 232 F.R.D. 648, 650 (D. Colo. 2005).